**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | **CRIM. NO. JKB-19-0473** |
| **DEION CHASE,** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Defendant Deion Chase filed a Motion for Release Pending Sentencing (Mot. Release, ECF No. 21) pursuant to the Bail Reform Act, 18 U.S.C.A. § 3141 *et seq.* The matter is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Chase's Motion for Release Pending Sentencing will be denied.

### I. Background

Chase is charged with two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). (Indictment at 1–3, ECF No. 1.) On February 20, 2020, Chase pleaded guilty to Possession of a Firearm and Ammunition by a Prohibited Person. (Plea Agreement at 1, ECF No. 18.) He is currently incarcerated at the D.C. Jail awaiting sentencing. (Mot. Release at 7.)

According to the Stipulation of Facts in Chase's Plea Agreement, in January 2019, a confidential source alerted police to the fact that Chase was distributing cocaine and heroin in Baltimore. (Plea Agreement at 10.) This confidential informant "also knew that Chase often carried a handgun." (*Id.*) In March 2019, police used a confidential informant to purchase cocaine

and heroin from Chase. (*Id.*) "On April 5, 2019, Baltimore Police Department detectives observed Defendant Chase engage in several hand-to-hand drug transactions" and arrested him based on these transactions. (*Id.*) "Chase was searched incident to his arrest, and 62 zip lock baggies of suspected cocaine were found on Chase." (*Id.*) While Chase was in custody at the Central Booking Intake Facility, Chase called his girlfriend and told her to move something "(handgun and/or drugs)" that he left in his house to an Acura vehicle that belonged to his mother. (*Id.*)

Several days later, after securing a search warrant, the police found "65 baggies of suspected cocaine . . . as well as packaging material, scales, and $15,563" in Chase's apartment. (*Id.*) A search of Chase's car yielded 106 baggies of suspected cocaine. (*Id.*) A search of the Acura vehicle which was registered to his mother also uncovered "a Glock, Model 23, .40 caliber handgun, loaded with 13 .40 caliber rounds." (*Id.*) At the time of the arrest, Chase had prior convictions which prohibited him from owning a firearm and ammunition, and Chase "knew of these prior convictions and his civil rights had not been restored." (*Id.* at 11.)

The grand jury returned an indictment against Chase on October 8, 2019. (Indictment at 5.) Chase was arrested, and on October 15, 2019, Magistrate Judge Gesner held a detention hearing pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f). (Detention Order, ECF No. 10.) Judge Gesner found that Chase should be detained pending trial. (*Id.*) Specifically, Judge Gesner found that the Government was entitled to a presumption under § 3142(e), and that Chase failed to rebut this presumption. (*Id.*) Judge Gesner also found "by clear and convincing evidence, from the information produced at the hearing that the defendant poses a risk to the safety of other persons and the community" and "that there is no condition or combination of conditions which will reasonably assure community safety." (*Id.*) Judge Gesner supported her findings by reference to the nature of the offense, the overwhelming weight of the evidence, Chase's past criminal

convictions for the same offense, evidence of Chase's continued criminal activity pending trial on narcotics charges, and the recommendation of pretrial services. (*Id.*)

On April 20, 2020, after pleading guilty to Possession of a Firearm and Ammunition by a Prohibited Person, Chase filed a motion for temporary release pending sentencing based largely on the impact of the COVID-19 pandemic emergency. (Mot. Release.) In response, the Court issued an Order listing the topics that it wanted addressed in the subsequent briefing, including Chase's medical conditions, the current state of his facility relating to the COVID-19 virus, details regarding his proposed release plan, and arguments as to whether Chase satisfies the requirements for temporary release under 18 U.S.C. § 3142(i). (Briefing Order, ECF No. 22.) The Court permitted Chase to file a supplemental memorandum to address this information, which Chase subsequently filed along with his medical records.[1] (*See* Suppl. Mem., ECF No. 25.) The Government opposes Chase's motion for release pending sentencing. (Opp'n Mem., ECF No. 28.)

If released, Chase proposes that he would live at his grandmother's house in Baltimore. (Suppl. Mem. at 8.) Chase's mother, who lives at the house with three of her children, would serve as Chase's third-party guardian. (*Id.* at 9.) The house has a finished basement with a full bathroom, in which Chase could quarantine after his release. (*Id.*) Chase's family has proposed that Chase's grandmother could move in with another family member if Chase's potential exposure to COVID-19 would pose too great a risk to her due to her age and health conditions, or if the Court believes her past criminal history would be a detriment to Chase's release. (*Id.*)

## II. *The Bail Reform Act*

Chase argues that he is eligible for release pending sentencing based on two provisions of the Bail Reform Act. First, Chase argues that he is eligible for release pursuant to § 3143(a)(1),

---

[1] Chase filed his medical records with the Court under seal, the Court has reviewed these records, and these records have been shared with counsel for the Government.

3

which provides that a defendant who has been found guilty and is awaiting sentencing for an offense for which the applicable guidelines recommend imprisonment "shall" be detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." Pursuant to § 3145, an individual "ordered detained by a magistrate judge . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," which "shall be determined promptly." "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). In determining whether a defendant poses danger to the community or is a flight risk, Courts consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a . . . controlled substance, [or] firearm. . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C.A. § 3142(g); *see also United States v. Ashley*, Crim. No. RDB-06-0034, 2020 WL 1675994, at *3 (D. Md. Apr. 6, 2020) (applying § 3142(g) factors to evaluate a defendant's danger to the community under § 3143(a)(1)).[2]

Second, Chase argues that he is eligible for release pursuant to § 3142(i). (Mot. Release at 4–5, 14–16.) This section provides that after the entry of a detention order, the court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C.A. § 3142(i). The burden is on the defendant to justify his release pursuant to § 3142(i). *See United States v. Creek*, Crim. No. CCB-19-36, 2020 WL 2097692, at *3 (D. Md. May 1, 2020).

When a defendant makes a request for relief under § 3142(i) based on the COVID-19 pandemic emergency, the United States Court of Appeals for the Fourth Circuit has said the district court should consider "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i)." *United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020) (order remanding case). Specifically, in undertaking this analysis, the Court considers: "(1) The original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood

---

[2] The Government does not argue that Chase is a flight risk, nor does the Court see anything in the parties' briefing or submissions that would support such a finding. The Government instead focuses its opposition on the danger that would be posed to the community were Chase to be released pending sentencing. Therefore, in evaluating the Bail Reform Act factors, the Court focuses its analysis solely on the potential danger to the community that could result from Chase's release.

that a defendant's release would increase the COVID-19 risks to others." *United States v. Green*, Crim. No. JMC-19-00539, 2020 WL 1873967, at *3 (D. Md. Apr. 15, 2020) (citing *United States. v. Clark*, 2020 WL 1446895 (D. Kan. March 25, 2020)).

### III.     Analysis

#### A. Section 3143(a)(1)

Chase argues that he can demonstrate by clear and convincing evidence that he is not a flight risk or a danger to the community as required for release pending sentencing under § 3143(a)(1). (Mot. Release at 5.)  First, the Court considers the nature and circumstances of the offense charged.  18 U.S.C.A. § 3142(g).  Here, Chase was charged with two counts of possession with intent to distribute a controlled substance and one count of possession of a firearm and ammunition by a prohibited person.  These are serious offenses—a fact Chase acknowledges—and the risk to the community from gun violence remains unabated even during the COVID-19 pandemic emergency.  *See United States v. West*, Civ. No. ELH-19-364, 2020 WL 1820095, at *3 (D. Md. Apr. 10, 2020) ("[E]ven in the midst of a global pandemic that has brought daily life largely to a halt, Baltimore continues to be racked by gun violence.")  (citing Justin Fenton, *Baltimore Crime During Coronavirus: Property Crime Plummets, Gun Violence Continues*, BALT. SUN (Apr. 4, 2020 5:00 a.m.), https://bit.ly/3e8WT43.)

Chase argues that his prior conduct was not violent (Mot. Release at 6), but he has pleaded guilty to possession of a firearm and ammunition by a prohibited person, and was convicted once before in 2016 for possession with intent to distribute narcotics and possession of a firearm (Opp'n Mot. at 8; Draft Presentence Report, Reply, Ex. A, ECF No. 32-1).  Chase's multiple convictions for possession of unlawful firearms give the Court great pause.  As the Fourth Circuit has recognized, "[g]uns are tools of the drug trade." *United States v. Ward*, 171 F.3d 188, 195 (4th

Cir. 1999). The Court finds that drug trafficking and unlawful possession of a weapon are serious offenses which lead to significant and long-lasting harm to the community, and therefore finds that this factor weighs against release. *See, e.g.*, *West*, 2020 WL 1820095, at *3 (finding illegal possession of a firearm is a "serious offense" under § 3142(g)).

The Court next considers the weight of the evidence. 18 U.S.C.A. § 3142(g). Chase acknowledges that this factor favors the Government, though he argues that his acceptance of responsibility for his conduct should count in his favor. (Mot. Release at 6.) Here, the police observed Chase engaging in hand-to-hand drug transactions and recovered dozens of baggies of cocaine on him during a search incident to arrest. (*See* Plea Agreement at 10.) Additional drugs were found at Chase's apartment and a weapon and ammunition were also recovered following the issuance of a search warrant. (*Id.*) Most importantly, Chase has admitted to the conduct in question and pleaded guilty to violating § 922(g). (*Id.* at 1.) Therefore, the Court finds that the weight of the evidence against Chase is overwhelming, and this factor weighs against his release.[3]

The Court next considers the history and characteristics of the defendant. 18 U.S.C.A. § 3142(g). Chase was previously convicted of attempted possession with intent to distribute a controlled dangerous substance in 2013, as well as possession with intent to distribute narcotics and possession of a firearm in 2016. (Opp'n Mem. at 8; Draft Presentence Report, Reply, Ex. A.) He also had several warrants for violations of probation issued against him following the 2013 conviction, though Chase argues that his probation before judgment was ultimately closed satisfactorily in 2014, and there were no violations of probation for his 2016 conviction. (Opp'n

---

[3] Courts disagree over whether the weight of evidence is one of the most important factors, *see United States v. English*, 629 F.3d 311, 317 (2d Cir. 2011) (quoting district court's findings which were ultimately affirmed), or the least important factor, *see United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). This Court takes no position on the relative weight of this factor, and instead takes it under consideration along with the other factors enumerated in the Bail Reform Act.

Mem. at 8; Reply at 1–2.)  In sum, Chase has continuously engaged in drug trafficking despite numerous convictions for the same behavior.  Though Chase argues that the knowledge of his pending sentencing and the terms of his plea agreement would make him more likely to follow any imposed rules this time around (Mot. Release at 6–7), Chase's multiple drug distribution and firearms charges give the Court great pause, and his history of recidivism weighs heavily in the Court's decision that release would be inappropriate.

Finally, the Court considers the danger Chase would pose to the community if he was released.  18 U.S.C.A. § 3142(g).  Because Chase has been charged multiple times with drug distribution and firearms offenses, the Court is doubtful that Chase would stop engaging in that conduct if released.  Accordingly, the Court finds that Chase has failed to demonstrate by "clear and convincing evidence" that he would not pose a danger to the safety of the community if he were released due to the risk that he would continue drug trafficking and carrying an unlawful weapon.  Therefore, his request for relief pursuant to § 3143(a)(1) is denied.

### B. Section 3142(i)

The Court now evaluates whether Chase has met his burden in demonstrating that a "compelling reason" necessitates his release under § 3142(i) in light of the COVID-19 pandemic. First, the Court first considers the original grounds for Chase's detention. *Green*, 2020 WL 1873967, at *3 (citing *Clark*, 2020 WL 1446895).  As detailed above, Chase was detained after being charged with possession with intent to distribute narcotics and unlawful possession of a firearm, two serious offenses which cause significant and lasting harm to the community. *See* Part III.A, *supra*.

Next, the Court considers the specificity of Chase's COVID-19 concerns, *Green*, 2020 WL 1873967, at *3 (citing *Clark*, 2020 WL 1446895), including the severity of the risk to Chase in

light of his medical conditions and the situation at the D.C. Jail, *United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020) (order remanding case). Chase is a 25-year old who has at times suffered from high blood pressure since entering custody. (Suppl. Mem. at 1–4.) Chase argues that the fact that he has not been officially diagnosed with hypertension "speaks to the inadequacy of the medical care he is receiving, not the lack of serious health condition." (Reply at 7.) Chase has not received any medication for his high blood pressure, and Chase argues that the lifestyle changes which could reduce his high blood pressure are "impossible to make while incarcerated." (Suppl. Mem. at 3.)

Hypertension is a common comorbidity for individuals who die from COVID-19, and though younger individuals such as Chase have a much lower death rate from COVID-19 than older individuals, the death rate for hospitalized males in his age range is significant at 7.1%.[4] (*See* JAMA Report, Suppl. Mem., Ex. B, ECF No. 25-2.) Though Chase may not be among the most vulnerable age group for COVID-19 complications, the Court acknowledges the many unknowns surrounding the virus, and does not discount the very real danger Chase could face if he became infected with COVID-19. The Court also notes that many other courts in this district have denied release to defendants with significantly more serious health conditions than Chase after weighing the relevant factors in each case. *See, e.g.*, *United States v. Jefferson*, Crim. No. CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020) (denying release to defendant with asthma who was charged with possession of a firearm by a convicted felon); *United States v. Gray*, No. GJH-19-407, 2020 WL 1554392, at *2 (D. Md. Apr. 1, 2020) (denying release to defendant who "had

---

[4] The Court notes that this is the death rate for hospitalized males in their twenties, and that the actual death rate for males in Chase's age range who become infected with COVID-19 would be lower if individuals who were not sick enough to be hospitalized were also included.

9

open heart surgery as a child, requires regular EKGs, and continues to experience a diminished immune system, heart flutters, and shortness of breath").

The Court now turns to the risks facing Chase based on the conditions at the D.C. Jail. As both parties highlight, the D.C. Jail's failures in responding to the COVID-19 pandemic have been documented in depth in *Banks v. Booth*, Civ. No. CKK-20-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020), a case pending before the United States District Court for the District of Columbia. (Mot. Release at 8–12; Opp'n Mem. at 11–13.) In *Banks*, inmates at the D.C. Jail brought a constitutional challenge regarding the conditions of their confinement as related to the COVID-19 pandemic and moved for a Temporary Restraining Order, requesting in part plaintiffs' immediate release from the D.C. Jail. The court in *Banks* found that the plaintiffs were likely to succeed on the merits of their claims that jail officials: 1) "knew or should have known that the jail conditions posed an excessive risk to [plaintiffs'] health" under the Fifth Amendment, and 2) "the jail conditions exposed [plaintiff] to an unreasonable risk of serious damage to his health and that Defendants acted with deliberate indifference in posing such a risk" under the Eighth Amendment. *Banks*, 2020 WL 1914896, at *6–11. The court, relying on court-appointed *amici*, identified a variety of failures in the D.C. Jail's response to COVID-19, including: a lack of cleaning supplies; inadequate screening procedures for those entering the jail; failure to reduce crowds or enforce social distancing; long waits for medical care for inmates experiencing COVID-19 symptoms; inadequate quarantine measures; and a lack of proper protective equipment. *Id.* at *9–10.

Though the court declined to grant plaintiffs' request for immediate release from the D.C. Jail, the court mandated that D.C. Jail officials implement a detailed list of corrective measures to address the identified deficiencies in its COVID-19 response and better ensure the safety of inmates moving forward. *Id.* at *13–15. Two days before the decision in *Banks* was issued, the

Director of the D.C. Department of Corrections ("DOC") also issued a memorandum detailing both new and existing policies and procedures that employees and contractors must follow to keep inmates safe, which also addressed many of the deficiencies identified by the court in *Banks*. (*See* DOC COVID-19 Policy Mem., Opp'n Mem., Ex. A, ECF No. 28-1.) Thus, while serious problems have been identified with the D.C. Jail's response to COVID-19, the DOC is now legally mandated to improve these conditions, and there is evidence that it is implementing measures to do so.

To be clear, the Court is deeply concerned about the reports regarding the conditions at the D.C. Jail and is aware that the reform effort mandated in *Banks* will take time to implement. Unfortunately, COVID-19 cases continue to rise among individuals in DOC custody.[5] The Court also acknowledges the inherent difficulties facing individuals living in group residential settings, including prisons, to protect themselves from potential exposure to COVID-19, and the resulting anxiety this causes. *See, e.g.*, *United States v. Sturmer*, Crim. No. GJH-18-468, 2020 WL 2097706, at *1 (D. Md. May 1, 2020) (describing feelings of helplessness facing those unable to take measure to protect themselves from COVID-19); *West*, 2020 WL 1820095, at *5 (D. Md. Apr. 10, 2020) ("Social distancing—the only presently effective measure to reduce the risk of infection—is indeed exceedingly difficult for people confined in detention centers.").

Finally, the Court evaluates whether Chase's release plan would "mitigate or exacerbate [Chase's] overall COVID-19 risks," and the "likelihood that [Chase's] release would increase the COVID-19 risks to others." *Green*, 2020 WL 1873967, at *3 (citing *Clark*, 2020 WL 1446895).

---

[5] *Compare United States v. Creek*, Crim. No. CCB-19-36, 2020 WL 2097692, at *2 (D. Md. May 1, 2020) (noting that as of April 27, 2020, DOC listed 127 incarcerated individuals as COVID-19 positive), *with* Public Safety Agency COVID-19 Case Data, https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data (last visited May 7, 2020) (listing 158 inmates who have tested positive for COVID-19 as of May 6, 2020). There are roughly 1020 inmates at the D.C. Jail, and roughly 400 inmates at the Correctional Treatment Facility. *See* Report, *Banks*, 2020 WL 1914896, at *17–18.

Chase proposes that he could stay quarantined from members of his family and the community by staying at his grandmother's house in the basement (which as a full bathroom), and that family members could leave food for him by the door. (Suppl. Mem. at 8–10.) Though Chase could potentially expose whomever drives him home, his overall plan would significantly minimize the risk that Chase would expose others to COVID-19 and his removal from the conditions at the D.C. Jail would undoubtedly reduce his risk of infection so long as he fully abided by state and local health guidelines. However, the success of Chase's proposed release plan would be contingent upon Chase strictly following any quarantine instructions and relevant state policies following his release. Chase has violated the terms of his probation in the past is a repeat offender. The Court is skeptical that Chase would abide by such rules given his history of noncompliance.

Though the Court is sympathetic to Chase's concerns regarding the COVID-19 pandemic, the Court has carefully weighed the risks facing Chase due to COVID-19 along with the factors enumerated in the Bail Reform Act, *see* Part III.A, *supra*, and has determined that no set of conditions could ensure the safety of the community if Chase was released pending sentencing. Accordingly, the Court finds that the danger to the community resulting from Chase's release outweighs the risks that Chase—who, despite suffering at times from high blood pressure, is otherwise a relatively healthy young man—would face if he remains incarcerated at the D.C. Jail. The severity of the crime at issue and Chase's criminal history—including his failure to abide by the terms of probation in the past and his multiple convictions for unlawful possession of weapons—weigh heavily in convincing the Court that there is no way to ensure the safety of the community if Chase was released pending sentencing. Accordingly, the Court finds that Chase has failed to demonstrate a "compelling reason" necessitating release pursuant to § 3142(i).

IV.   *Conclusion*

For the foregoing reasons, an Order shall enter denying Defendant's Motion for Release Pending Sentencing.

DATED this 8th day of May, 2020.

BY THE COURT:

/s/

James K. Bredar
Chief Judge